Justice Alito,
with whom Justice Kennedy joins, concurring.
I join the opinion of the Court on the understanding that (1) it goes no further than to hold that a public school may restrict speech that a reasonable observer would interpret as advocating illegal drug use and (2) it provides no support for any restriction of speech that can plausibly be interpreted as commenting on any political or social issue, including speech on issues such as “the wisdom of the war on drugs or of legalizing marijuana for medicinal use.” See post, at 445 (Stevens, J., dissenting).
The opinion of the Court correctly reaffirms the recognition in Tinker v. Des Moines Independent Community School Dist., 393 U. S. 503, 506 (1969), of the fundamental principle that students do not “shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.” The Court is also correct in rioting that Tinker, which permits the regulation of student speech that threatens a concrete and “substantial disruption,” id., at 514, does not set out the only ground on which in-school student speech may be regulated by state actors in a way that would not be constitutional in other settings.
But I do not read the opinion to mean that there are necessarily any grounds for such regulation that are not already recognized in the holdings of this Court. In addition to Tinker, the decision in the present case allows the restriction of speech advocating illegal drug use; Bethel School Dist. No. 403 v. Fraser, 478 U. S. 675 (1986), permits the regulation of speech that is delivered in a lewd or vulgar manner as *423 part of a high school program; and Hazelwood School Dist. v. Kuhlmeier, 484 U. S. 260 (1988), allows a school to regulate what is in essence the school’s own speech, that is, articles that appear in a publication that is an official school organ. I join the opinion of the Court on the understanding that the opinion does not hold that the special characteristics of the public schools necessarily justify any other speech restrictions.
The opinion of the Court does not endorse the broad argument advanced by petitioners and the United States that the First Amendment permits public school officials to censor any student speech that interferes with a school’s “educational mission.” See Brief for Petitioners 21; Brief for United States as Amicus Curiae 6. This argument can easily be manipulated in dangerous ways, and I would reject it before such abuse occurs. The “educational mission” of the public schools is defined by the elected and appointed public officials with authority over the schools and by the school administrators and faculty. As a result, some public schools have defined their educational missions as including the inculcation of whatever political and social views are held by the members of these groups. ’
During the Tinker era, a public school could have defined its educational mission to include solidarity with our soldiers and their families and thus could have attempted to outlaw the wearing of black armbands on the ground that they undermined this mission. Alternatively, a school could have defined its educational mission to include the promotion of world peace and could have sought to ban the wearing of buttons expressing support for the troops on the ground that the buttons signified approval of war. The “educational mission” argument would give public school authorities a license to suppress speech on political and social issues based on disagreement with the viewpoint expressed. The argument, therefore, strikes at the very heart of the First Amendment.
*424 The public schools are invaluable and beneficent institutions, but they are, after all, organs of the State. When public school authorities regulate student speech, they act as agents of the State; they do not stand in the shoes of the students’ parents. It is a dangerous fiction to pretend that parents simply delegate their authority — including their authority to determine what their children may say and hear— to public school authorities. It is even more dangerous to assume that such a delegation of authority somehow strips public school authorities of their status as agents of the State. Most parents, realistically, have no choice but to send their children to a public school and little ability to influence what occurs in the school. It is therefore wrong to treat public school officials, for purposes relevant to the First Amendment, as if they were private, nongovernmental actors standing in loco parentis.
For these reasons, any argument for altering the usual free speech rules in the public schools cannot rest on a theory of delegation but must instead be based on some special characteristic of the school setting. The special characteristic that is relevant in this case is the threat to the physical safety of students. School attendance can expose students to threats to their physical safety that they would not otherwise face. Outside of school, parents can attempt to protect their children in many ways and may take steps to monitor and exercise control over the persons with whom their children associate. Similarly, students, when not in school, may be able to avoid threatening individuals and situations. During school hours, however, parents are not present to provide protection and guidance, and students’ movements and their ability to choose the persons with whom they spend time are severely restricted. Students may be compelled on a daily basis to spend time at close quarters with other students who may do them harm. Experience shows that schools can be places of special danger.
*425 In most settings, the First Amendment strongly limits the government’s ability to suppress speech on the ground that it presents a threat of violence. See Brandenburg v. Ohio, 395 U. S. 444 (1969) (per curiam). But due to the special features of the school environment, school officials must have greater authority to intervene before speech leads to violence. And, in most cases, Tinker’s “substantial disruption” standard permits school officials to step in before actual violence erupts. See 393 U. S., at 508-509.
Speech advocating illegal drug use poses a threat to student safety that is just as serious, if not always as immediately obvious. As we have recognized in the past and as the opinion of the Court today details, illegal drug use presents a grave and in many ways unique threat to the physical safety of students. I therefore conclude that the public schools may ban speech advocating illegal drug use. But I regard such regulation as standing at the far reaches of what the First Amendment permits. I join the opinion of the Court with the understanding that the opinion does not endorse any further extension.